No. 26,881.

W. L. BUTLER, *Appellant*, v. (MAY WALSH and JOHN W. BREY-FOGLE, Trustee in Bankruptcy, *Defendants*) E. S. WINTERMUTE, *Appellee*.

SYLLABUS BY THE COURT.

1. MORTGAGES—*Priorities—Purchase with Notice of Equities—Evidence.* In a controversy between two parties, each of whom had obtained a note secured by a mortgage on the same property, and where each was asserting priority, the evidence is examined and it is held to be sufficient to sustain a finding that the plaintiff purchased and paid for his note and mortgage with notice of the equities and priority of right of his adversary.

2. PAYMENT—*Evidence—Sufficiency.* The evidence in the case is held to be sufficient to show that the indebtedness to plaintiff for which his note and mortgage were given as collateral security, had been paid and discharged.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed December 11, 1926. Affirmed.

*S. D. Scott*, of Olathe, *I. P. Hyland, Frank A. Boys, Paul R. Stinson, Arthur Mag, William H. Wilson* and *Edward M. Cox*, all of Kansas City, Mo., for the appellant.

*J. W. Parker, G. A. Roberds*, both of Olathe, *I. N. Watson, John B. Gage* and *Henry N. Ess*, all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by W. L. Butler as trustee for the First National Bank, of Kansas City, Mo., to foreclose a mortgage on real estate given by May Walsh to J. L. Pettyjohn & Co., to secure a promissory note of $5,000. E. S. Wintermute, who held a mortgage on the same property, was named as a defendant, May Walsh did not contest nor appear in the case, and the question in controversy was whether plaintiff or Wintermute had the prior lien upon the property. The question was determined in favor of Wintermute, and from the judgment plaintiff appeals.

---

Bills and Notes, 8 C. J. p. 464 n. 15. Mortgages, 41 C. J. pp. 552 n. 70, 795 n. 3; 19 R. C. L. 421.

It appears that J. L. Pettyjohn & Co., hereinafter spoken of as the company, were dealers in mortgages and other securities, and held the May Walsh note of $5,000 secured by a mortgage. On December 20, 1920, the company owed the First National Bank about $60,000, and had put up as collateral, securities to the extent of $14,000, and at that time had a cash deposit in the bank of about $28,000. Abernathy, an officer of the bank, having heard some disquieting information as to the condition of the company, went to the office of the latter and first asked for a check appropriating the $28,000 deposit, thus crediting it on the indebtedness to the bank. The manager of the company being absent, the bookkeeper declined to issue the check, but did yield to the demand of the bank for more collateral and turned over securities of the face value of about $33,000. Upon the return of the officer to Kansas City, the $28,000 deposit was charged off and credited on the $60,000 debt. Two or three days later the bank was induced to loan the company $13,000, and took as collateral for the loan, bank stock of the conceded value of $20,-000. Shortly afterwards it sold the bank stock for its face value, and the proceeds were applied first to the payment of the $13,000 loan, and the balance $7,000, was applied on the old indebtedness to the bank. There is testimony that the bank acquired possession of the May Walsh note as collateral sometime about December 30, 1920, about a week after the $33,000 block of collateral notes and securities had been obtained, and the mortgage securing the Walsh note was recorded on December 30, 1920. When the Walsh notes were obtained by Wintermute from the company, the latter represented that the mortgage securing them was a first lien upon the property, but that mortgage was not recorded until January 18, 1921, so that there was priority of right in plaintiff according to the recording act. On February 21, 1921, the company was adjudged a bankrupt, and John W. Breyfogle was duly appointed trustee in bankruptcy to administer the estate. The trustee was a witness in this case, and his evidence was to the effect that only about ten per cent of the indebtedness against the estate had been realized from the assets. A suit was brought against the bank by the trustee, alleging that the bank had taken and held, as collateral on the indebtedness of the company, $53,950, an amount largely in excess of that indebtedness. It was also alleged that the transfer of this collateral to the bank, which included the Walsh note of $5,000, constituted a voidable pref-

erence under the law, as they were turned over about two months prior to the adjudication in bankruptcy. The trustee asked for the value of the securities in excess of what was taken to satisfy the debt to the bank. Before the case came to trial, Abernathy, in behalf of the bank, made a settlement with the trustee, paying to him $10,000 in cash as the value of the securities held by it in excess of what was necessary to discharge the indebtedness owing by the company to it. In July, 1924, the bank paid to the trustee $10,000 as a consideration for the transfer of the right, title and interest of the trustee to all the notes held as collateral by the bank, including the May Walsh note.

We think the court reached a correct conclusion as to the matter of priority. In a memorandum opinion the court stated that on December 20, 1920, the indebtedness of the bank was $60,000, and then it referred to the credits shown which reduced the indebtedness to about $17,000. Reference also was made to the large amount of collateral secured by the bank, which appeared to amount to more than double the indebtedness. Some of the testimony indicates that the bank acquired the Walsh note on December 21, 1920, while other testimony indicates that it was acquired on December 30, 1920, after the large block of collateral had been taken from the company. As the Walsh note and other securities were obtained shortly before the company was adjudged a bankrupt, the trustee made claim to the collateral securities upon the ground that the transfer of them constituted a voidable preference and accordingly he brought suit against the bank in the federal court to recover them. In that action the trustee claimed the amount of collateral of the company illegally transferred and held was $53,950, and the testimony of the trustee was that the bank actually held that amount. The action in the federal court was not brought to trial, but was settled about a year prior to the trial of the present case. In July, 1924, the bank paid the trustee $10,000 for the collateral securities of the company it held and on which it had not realized, in consideration of which the trustee transferred the title and all the interest he held in the Walsh note and other securities. Before that time the bank had full information of the warranties and representations made to Wintermute by the company and of the equities of Wintermute in the mortgaged property. The trial court found that the bank was not a purchaser for value until that time and that, having knowledge of the equities ex-

Butler v. Walsh.

isting between Wintermute and the company, it stood in the same position as the bankrupt company would have in a controversy with Wintermute. It is said by the plaintiff that it does not appear that there was an excess of collateral, nor even that the bank had ever realized the amount of its debt out of the collateral. By the settlement made the bank in fact acknowledged that there was a large excess of collateral. It also admitted that the value of the collateral purchased exceeded the amount of the indebtedness, at least to the extent of $10,000. Instead of turning back the Walsh note or other securities and thus reducing the amount to be paid to the trustee, it chose to pay a larger sum in order to acquire the title to the paper. As to the payment of the indebtedness there is testimony tending to show that the bank realized more than the full amount of its debt of credits and the collateral. Aside from the $28,000 credited on the debt, as well as other credits that have been mentioned, a ledger account of the bank relating to the transactions in question was produced in evidence and it showed credits as follows:

| | |
|---|---|
| January 8, 1921 | $6,000 |
| January 27, 1921 | 14,000 |
| February 4, 1921 | 8,022 |
| July 9, 1924 | 19,027 |

These credits amount to $47,050, and with the other credits shown very largely exceeded the indebtedness of the company. In the purchase of the notes the bank recognized that the title was in the trustee and the consideration for the purchase was then paid. While it had obtained possession of the note before that time it had not parted with the purchase price, and it has been held that it is the time of payment and not the time of gaining possession that controls in determining when a purchaser becomes a holder in due course. (*Callahan v. Bank,* 113 Kan. 577, 215 Pac. 831.) The action brought by the trustee in bankruptcy and the settlement and transfer of the notes purchased by the bank were set forth in the pleadings in this case, and evidence of the transaction was received. In this connection plaintiff argues that only the trustee could question the preference or maintain an action to set aside an unlawful preference, and that defendant could not do so nor take any advantage of the validity or invalidity of the preference. It is conceded that the trustee alone can maintain a suit to avoid a preference, but it appears that the facts pertaining to the action of the trustee and

the settlement and transfer was brought out to show that the Walsh note was purchased and paid for by the bank after the equities of Wintermute had intervened and the bank had notice of these equities. For that purpose the matter of the bringing of the suit and settlement were pertinent and are controlling facts in the present case. The findings of the trial court are necessarily conclusive on all questions relating to the purchase of the paper, the good faith of the plaintiff throughout the transaction and matters of fact tending to show whether or not the plaintiff became a purchaser in due course. The evidence is deemed to be sufficient to support the findings of the trial court, and its judgment is affirmed.